**KINGVISION PAY–PER–VIEW LTD., Plaintiff,**

v.

**Gary A. NILES, et al., Defendants.**

**No. 01–CV–13–B–S.**

United States District Court, D. Maine.

July 26, 2001.

Tina Schneider, Portland, ME, Julie Cohen Lonstein, Ellenville, NY, for Plaintiff.

Gary A Niles, Dover–Foxcroft, ME, Michael Martin, Greenville, ME, for Defendants.

## ORDER GRANTING MOTION TO SET ASIDE DEFAULT

SINGAL, District Judge.

Presently before the Court is a Motion to Set Aside Default filed by Defendant

Gary A. Niles (Docket # 15).[1] For the reasons discussed below, the Court GRANTS the Motion.

## I. BACKGROUND

Plaintiff Kingvision Pay–Per–View Ltd. ("Kingvision") is in the business of broadcasting television programs to customers for remuneration, hence the phrase "pay-per-view." Kingvision entered into contracts with numerous customers for a championship boxing match scheduled for March 13, 1999, which Kingvision would broadcast to its paying customers via an encrypted satellite signal.

Defendants Michael Martin and Gary Niles own and operate Miami North, a/k/a Miami North Sports Lounge, located in Bangor, Maine. In the past, Defendants allegedly have entered into contracts with Kingvision to receive particular television broadcasts. Regarding the March 13, 1999 boxing match, however, Plaintiff and Defendants never entered into a "pay-per-view" agreement. Kingvision, however, alleges that Defendants willfully intercepted the encrypted satellite signal, decrypted it, and then exhibited the March 13th boxing match at the Miami North Sports Lounge.

On January 23, 2001, Kingvision filed suit against Martin, Niles and Miami North. Appearing pro se, Defendant Martin filed an Answer (Docket # 2) and an Amended Answer (Docket # 12), including two counterclaims. Defendants Niles and Miami North, however, did not file an answer. On May 1, 2001, the Court issued an Order to Show Cause why the case should not be dismissed against Defendants Niles and Miami North for lack of prosecution because even though three months had passed, Plaintiff had not moved for default. (*See* Order to Show Cause (Docket # 4).) Shortly thereafter, Kingvision moved for default against the two wayward Defendants. (*See* Pl. Req. for Default (Docket # 7).) Pursuant to Rule 55(a), the Clerk entered default against Defendants Niles and Miami North on May 9, 2001. Subsequently, Kingvision filed a motion for default judgment against both Defendants. (*See* Pl. Mot. for Entry of Default J. (Docket # 8).) On the same day, Defendant Niles, acting pro se, filed a pleading featuring two titles, "Motion for Entry of Dismissal" and "Answer," apparently on behalf of himself and Defendant Miami North. (*See* Docket # 11). Because default had been entered, the Magistrate Judge denied the filing to the extent that it constituted a motion to dismiss and struck it to the extent that it purported to be an answer. (*See* Order (Docket # 14).) In that Order, the Magistrate Judge explained that once default has been entered, the only appropriate response for a defendant to make is a motion to set aside default. (*See id.*) On June 11, 2001, Defendant Niles filed the instant Motion on behalf of himself. (*See* Def. Niles's Mot. to Set Aside Default J. (Docket # 15).) It appears that no one has attempted to set aside default on behalf of Miami North.

In the Motion, Niles argues that default should not have been entered against him because there had been a communication between David Gray, an attorney representing Niles, and Kingvision's counsel. "I was so informed that a judgment [sic] would not be entered because of the said communication." (*See* Def. Niles's Mot. to Set Aside Default J. (Docket # 15).) De-

---

1.  The filing is actually entitled "Motion to Set Aside Default Judgment." (Docket # 15). Thus far, however, although default has been entered against Defendant Niles, default judgment has not been entered against him. Therefore, the Court construes Defendant Niles's motion as a Motion to Set Aside Default. *See Ahmed v. Rosenblatt*, 118 F.3d 886, 890 (1st Cir.1997) (district courts should construe pro se filings liberally).

fendant Niles provides no other argument to set aside default.

Kingvision has filed a response brief, in which it explains that its counsel and Mr. Gray had spoken at least five times about settling the lawsuit during the months of March and April of 2001. By May, however, Kingvision's counsel stopped hearing from Mr. Gray, who called one last time on May 15, 2001 to inform Kingvision's attorney that he no longer was representing Mr. Niles and that he had advised his former client of the pending default.

## II. DISCUSSION

Default and default judgment are two different things. *See* Rule 55. If a defendant fails to file an answer in response to a complaint, and the plaintiff notifies the Court, then the Clerk must enter default against that defendant. *See* Rule 55(a). Once default has been entered against a defendant, then it is incumbent upon the plaintiff to make clear the amount of damages to which it is entitled and to make a motion for default judgment. At that point, the Court can enter default judgment against a dilatory defendant. *See* Rule 55(b). In the instant action, default has been entered against two different Defendants: Gary Niles and Miami North. Default judgment, however, has not been entered against any party.

■ The purpose of default and default judgment is to ensure that defendants promptly respond when a lawsuit has been filed against them. *See, e.g.,* Wright, Miller & Kane, Federal Practice & Procedure § 2693 (West 1998) (default and default judgment "are significant weapons for enforcing compliance with the rules of procedure and therefore facilitate the speedy determination of litigation.") (internal footnotes omitted). Pursuant to Rule 55(c), the Court may only set aside default upon a showing of "good cause." It is within the discretion of the Court to determine whether good cause warrants setting aside an entry of default. *See, e.g., United States v. One Urban Lot Located at 1 Street A–1,* 885 F.2d 994, 997 (1st Cir. 1989).

■ The Court must consider three factors to determine whether good cause exists: (1) whether the default was willful, (2) whether setting aside default would prejudice Plaintiff, and (3) whether Defendant's defenses are meritorious. *See, e.g., Keegel v. Key West & Caribbean Trading Co.,* 627 F.2d 372, 373–74 (DC Cir.1980). First, it does not seem that Defendant Niles willfully defaulted. Based on the limited record before the Court, it appears that Defendant Niles had retained an attorney, but that the attorney-client relationship dissolved, abruptly making Niles a pro sc litigant who was perhaps not entirely aware of the ramifications of the default procedure. Second, although the Court recognizes that Plaintiff has expended time, effort and money preparing for this case, prosecuting this case, and dealing with two Defendants that have failed to respond properly to the Complaint, setting aside default would not necessarily prejudice Plaintiff, especially in light of the fact that the case is proceeding against Defendant Martin. Third, although Defendant Niles does not argue any defenses in his Motion to Set Aside Default, in the filing entitled both "Motion for Entry of Dismissal" and "Answer," Defendant Niles not only denies any wrongdoing, but also he alleges that his codefendant, Michael Martin, is entirely at fault for any malfeasance. (*See* Docket # 11). *See Keegel,* 627 F.2d at 374 ("even a hint of a suggestion" of a meritorious defense fulfills the third factor). Therefore, the Court finds that good cause exists to set aside default against Defendant Niles.

## III. CONCLUSION

Based on the foregoing, the Court GRANTS Defendant Niles's Motion to Set Aside Default (Docket # 15). Thus, the Court ORDERS the Clerk to set aside default as to Defendant Niles.

SO ORDERED.